SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Deje M. Coviello** (A-54-21) (086673)

**Argued November 29, 2022 -- Decided January 19, 2023**

**SABATINO, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the following narrow jurisdictional question: when a portion of a defendant's sentence for driving while intoxicated requires the installation of an ignition interlock device (IID), should the defendant's application for credit toward that portion of the sentence be heard by the sentencing court or the Motor Vehicle Commission (MVC)?

In September 2013, defendant Deje M. Coviello was found unconscious in the driver's seat of a parked car with the engine running and with several open containers of alcoholic beverages on the passenger seat. She was arrested and pled guilty to disorderly conduct and driving while intoxicated (DWI).

On the disorderly conduct count, a Criminal Part judge sentenced defendant to one year of probation, a suspended eight-day jail term, and a monetary penalty. For the DWI conviction -- defendant's second such conviction -- she was sentenced to a two-year period of driver's license forfeiture and, among other things, a two-year period of breath alcohol IID installation to commence after completion of the license forfeiture. Defendant never installed an IID. Defendant maintains she did not do so because she could not afford to buy or lease a car and had no access to drive another person's vehicle.

In January 2019, defendant moved before the Criminal Part for a credit on her sentence. Defendant had fulfilled her entire sentence except for the IID requirement. The Criminal Part judge denied her motion, finding that the court lacked jurisdiction to hear defendant's application for relief from the IID requirement and that the MVC was the appropriate forum in which to seek that sentencing relief. The Appellate Division affirmed, holding that defendant's requested modification of the IID requirement was not "a sentencing issue," but rather an "administrative" matter for the MVC. The Court granted certification. 251 N.J. 22 (2022).

**HELD:** The sentencing court, and not the MVC, has the appropriate jurisdiction over defendant's motion for sentencing credit concerning the IID requirement.

1

1.  An IID is a device that permits a motor vehicle to be started only when the driver is sober.  The Legislature first enacted a DWI law concerning IIDs in 1999, and the Court reviews in detail the initial statutory requirements, as well as amendments made to the relevant laws in 2009 and 2019.  The Court also reviews regulations promulgated by the MVC for the installation and use of IIDs.  (pp. 9-17)

2.  Sentencing is a core function of the Judiciary.  A judge's sentencing decision is guided by criteria established by the Legislature and also must be faithful to constitutional principles.  Sentencing judges commonly exercise discretion by balancing pertinent aggravating factors against any mitigating factors that may weigh in the offender's favor.  They also must assure the sentence comports with any mandatory terms required by the applicable codes, such as the installation of an IID that is the subject of this case.  By contrast, administrative agencies in the Executive Branch are tasked with ensuring that the terms of sentence imposed by the courts are carried out.  The power to change a sentence, if justified, rests with the court. (pp. 17-19)

3.  The structure of the DWI laws is consistent with that general framework.  If the defendant is convicted of a DWI offense, the judge then imposes sentence as prescribed by the DWI statutes.  Once that sentence is imposed, the Executive Branch thereafter generally administers the terms of the sentence, including but not limited to IID installation.  Many of the implementation tasks are performed by the MVC.  The MVC does not, however, function as a sentencing court.  The plain text and structure of the DWI statutes make it clear that the court has overarching jurisdiction over DWI sentences.  The 1999, 2009, and present 2019 versions of the statute have maintained that judicial sentencing role.  Most pertinent here, the provision detailing the IID sentencing component refers to "the court . . . order[ing]" the IID as an additional "penalty."  N.J.S.A. 39:4-50.17(b) (2009) (emphasis added).  The court's role in imposing that penalty is repeated throughout the IID provision.  See id. at -50.17(a) to (c) (2009).  (pp. 19-20)

4.  The court's zone of discretion concerning the IID installation period is illustrated by this case.  Under the statutes that existed when defendant was sentenced in 2014, the court had the discretion to choose an IID installation period from one to three years.  After weighing the pertinent aggravating factors and the one relevant mitigating factor, the court decided that a two-year period of mandatory installation was appropriate for this defendant.  The legislative direction to the MVC to regulate the manner of IID installation and use does not grant authority to modify an IID sentence, and the statute's delegation of discretion to the MVC in administering the license restoration phase does not divest the court of its sentencing powers.  Nor does the "administrative" label used in State v. Revie, 220 N.J. 126, 128, 138-40 (2014), to refer to the IID and other non-custodial penalties alter the court's sentencing jurisdiction to impose those sanctions.  To the extent that State v.

2

Beauchamp, 262 N.J. Super. 532 (App. Div. 1993), might be read to strip the sentencing court of jurisdiction in this IID matter, the Court does not endorse such a reading. In essence, Beauchamp illustrates when a trial court has construed its jurisdiction too expansively whereas here jurisdiction was construed too narrowly. (pp. 20-23)

5. The nature of this defendant's request inherently calls for a judicial determination. Fundamentally, defendant is seeking a declaratory ruling that the years she lacked access to a vehicle, and was thus unable to install an IID, justify up to an equivalent period of relief from her sentence. Courts are well equipped to render declaratory rulings that involve such matters of status under the law. The MVC's legal position, as articulated by the Attorney General, that it lacks jurisdiction to hear defendant's motion, buttresses the Court's analysis. The Court declines to foist upon the MVC a sentencing motion that it has no jurisdiction to address. Instead, the Court remands the matter without prejudice to the defendant for further proceedings and expresses no view of the merits of the case. (pp. 24-26)

**REVERSED and REMANDED to the sentencing court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUDGE SABATINO's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-54 September Term 2021

086673

State of New Jersey,

Plaintiff-Respondent,

v.

Deje M. Coviello,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 29, 2022 | January 19, 2023 |

John Menzel argued the cause for appellant (John
Menzel, on the briefs).

Shiraz I. Deen, Assistant Prosecutor, argued the cause for
respondent (Bradley D. Billhimer, Ocean County
Prosecutor, attorney; Samuel Marzarella, Chief Appellate
Attorney, of counsel, and Shiraz I. Deen, on the briefs).

Oleg Nekritin argued the cause for amicus curiae
Association of Criminal Defense Lawyers of New Jersey
(Law Offices of Robert J. De Groot, attorneys; Oleg
Nekritin, on the brief).

David M. Kahler, Deputy Attorney General, argued the
cause for amicus curiae New Jersey Motor Vehicle
Commission (Matthew J. Platkin, Attorney General,
attorney; Melissa H. Raksa, Assistant Attorney General,

of counsel, and Jennifer R. Jaremback, Deputy Attorney General, on the brief).

---

JUDGE SABATINO (temporarily assigned)
delivered the opinion of the Court.

---

This appeal presents a narrow jurisdictional question posed by defendant's petition, which we paraphrase as follows:

> When a portion of a defendant's sentence for driving while intoxicated requires the installation of an ignition interlock device (IID), should the defendant's application for credit toward that portion of the sentence be heard by the sentencing court or the Motor Vehicle Commission (MVC)?

The trial court and the Appellate Division ruled that the MVC should hear such an application. We hold to the contrary. We conclude the sentencing court, and not the MVC, has the appropriate jurisdiction over defendant's motion for sentencing credit concerning the IID requirement. That conclusion is supported by well-established sentencing principles and the text and structure of the drunk driving statutes. It is also consistent with the legal position argued before us by the Attorney General, who appeared for the first time in this case as counsel for the amicus curiae MVC after certification was granted.

We consequently reverse the jurisdictional rulings and remand for further proceedings before the sentencing court. In accordance with the

2

narrow scope of our review, we do so without reaching the merits of defendant's application.

I.

On September 16, 2013, Toms River police officers found defendant Deje M. Coviello unconscious in the driver's seat of a parked car with the engine running and windshield wipers on. When defendant regained consciousness, she admitted she had been drinking. Several open containers of alcoholic beverages were visible on the passenger seat.

Defendant was arrested and issued three traffic citations for (1) driving while intoxicated (DWI), (2) driving with a suspended license, and (3) refusal to submit to chemical testing of breath. Defendant was also charged with the indictable offense of third-degree theft by unlawful taking.

Following negotiations, defendant pled guilty in the Criminal Part in February 2014 to an amended count of disorderly conduct, N.J.S.A. 2C:33-2, and the summons for DWI, N.J.S.A. 39:4-50. By agreement, the other charges were dismissed.

In April 2014, defendant was sentenced by a Criminal Part judge.[1] Her counsel at sentencing argued against jail time because of the strides defendant

_____

[1] The sentencing took place in the Criminal Part rather than the municipal court because of the inclusion of the indictable charges.

had taken to address her alcohol abuse, which had been a common feature of her past criminal history. In particular, defense counsel stressed defendant's sobriety over the preceding six months, her completion of a full-time treatment program, and her plans to enter a part-time treatment program.

In his sentencing analysis, the judge gave moderate weight to aggravating factor three, the likelihood of committing another offense, N.J.S.A. 2C:44-1(a)(3), and heavy weight to aggravating factor nine, the need to deter defendant and others from violating the law, id. at (a)(9). On the other hand, the judge found that mitigating factor ten applied, i.e., that defendant is particularly likely to respond affirmatively to probationary treatment, id. at (b)(10). The judge concluded the aggravating factors substantially outweighed the sole mitigating factor.

On the disorderly conduct count, the judge sentenced defendant to one year of probation and a suspended eight-day jail term with various conditions. That sentence also included a monetary penalty.

For the DWI conviction -- defendant's second such conviction -- she was sentenced to a two-year period of driver's license forfeiture, thirty days of community service, forty-eight hours of education at the intoxicated driver's resource center (IDRC), a two-year period of breath alcohol IID installation to

commence after completion of the license forfeiture, and additional monetary penalties.

As we explain in more detail below, under the statutory framework for a DWI conviction that existed at the time in 2014, the court was required to impose on offenders with one or more previous DWI convictions an obligation to install an IID on their vehicles for a period of one to three years.[2] Here, the sentencing judge chose to impose on defendant a two-year IID requirement, at the midpoint of the then-prescribed range.

The parties agree that defendant did not install an IID in a vehicle after her period of license forfeiture ended, or at any other time. Defendant maintains she did not do so because she could not afford to buy or lease a car and had no access to drive another person's vehicle.

Nearly five years after her sentencing, in January 2019, defendant moved before the Criminal Part for a credit on her sentence pursuant to Rule 7:9-4.[3] By that point, defendant had fulfilled her entire sentence, including the

---

[2] The statutory framework relevant in this appeal was amended in 2019, but defendant was sentenced under the pre-2019 statutory scheme, which we discuss to the extent it bears upon the issue before us.

[3] In pertinent part, Rule 7:9-4(a) provides that "[t]he court, in its discretion, may reduce or change a sentence . . . at any time during which the court retains jurisdiction over the matter."

5

two-year period of license revocation, except for the IID installation requirement.

In her motion, defendant certified that since the date she surrendered her driver's license for revocation in 2014, she had not owned, leased, or operated a motor vehicle in which an IID could have been installed. Her motion sought to have the court deem her sentence completed, so that she could apply for a driver's license with the MVC. She acknowledged her application for such a new license would require her to take a written test and a driving test and pay the applicable fees to the MVC.

Defendant contended the Legislature could not have reasonably intended that persons in a situation like hers, who cannot afford or do not have access to a vehicle, would be indefinitely precluded by the IID installation provision from having their licenses restored. Alternatively, she argued that the statute was ambiguous and that the rule of lenity should apply.

The Ocean County Prosecutor opposed defendant's motion. The Prosecutor[4] argued, first, that the MVC, and not the sentencing court, has exclusive jurisdiction over a request for any IID credit. Second, the Prosecutor

---

[4] For purposes of clarity in this unusual alignment of parties, we refer in our discussion to the County Prosecutor as "the Prosecutor" rather than as "the State," to distinguish the Prosecutor from the State Attorney General, serving as counsel here to the amicus state agency, the MVC.

6

asserted that, in any event, defendant's statutory arguments to justify such a credit lacked merit.

After a non-evidentiary proceeding, the Criminal Part judge denied defendant's motion for credit. As a threshold matter, the judge declared that the court lacked jurisdiction to entertain defendant's application for relief from the IID installation requirement under the pre-2019 statutory scheme. The judge agreed with the Prosecutor that the MVC, not the court, is the appropriate forum in which to seek sentencing relief, given the information that the MVC has at its disposal regarding "IDRC requirements, surcharges, and court install orders."

Going beyond his jurisdictional ruling, the motion judge further opined that defendant's request for sentencing credit had no substantive basis. In this regard, the judge observed that a defendant is not permitted to "wait out" and "choose to serve a longer driving license revocation as a substitute sentence for the [IID] installation." The judge noted the legislative purpose of the IID requirement is not to have defendants avoid driving, but instead "to ensure the defendant remains sober while operating a motor vehicle."

On appeal, the Appellate Division affirmed the sentencing court's denial of relief. Specifically, as to the singular issue of jurisdiction now before us, the appellate court held that defendant's requested modification of the IID

requirement was not "a sentencing issue," but rather an "administrative" matter for the MVC. The appellate court went on to say that defendant's substantive arguments for relief under the DWI statutes and the associated MVC regulations lacked merit.

Defendant also raised constitutional claims in the Appellate Division, arguing that rigidly imposing the IID installation requirement, despite her asserted inability to afford a vehicle, violated equal protection and due process principles. After finding the sentencing court lacked jurisdiction, the appellate court declined to address defendant's constitutional arguments.

Defendant then sought this Court's review, confining her petition for certification solely to the threshold jurisdictional issue. Defendant asked that we remand her case to the sentencing court and that we direct it to assume jurisdiction and formally adjudicate her request for an IID credit. Alternatively, defendant requested that we remand the matter to the Appellate Division for a disposition of her poverty-based constitutional arguments.

After we granted certification, see 251 N.J. 22 (2022), the Attorney General, in his role as counsel to the MVC, moved to participate before this Court as amicus curiae and address the jurisdictional issue. We granted that motion. In his brief, the Attorney General sides with defendant's legal position and argues that the sentencing court, not the MVC, has exclusive

8

jurisdiction over a request for sentencing credit from the IID requirement. The Attorney General takes no position concerning the merits.

The Association of Criminal Defense Lawyers of New Jersey, which also is appearing before us as amicus curiae, endorses the jurisdictional position of defendant and the Attorney General.

Meanwhile, the Prosecutor continues to argue that the MVC is the proper forum for defendant's application. Among other contentions, the Prosecutor insists that the Legislature has delegated to the MVC many functions concerning the administration of the IID requirement, and that defendant's motion seeking a credit from that requirement therefore constitutionally falls within the sphere of Executive Branch functions. The Prosecutor further asserts the trial court has no remaining role to perform after it has imposed sentence on a convicted driver.

## II.

### A.

An IID is a device that "permit[s] a motor vehicle to be started only when the driver is sober." N.J.S.A. 39:4-50.16(b). It is "a blood alcohol equivalence measuring device which will prevent a motor vehicle from starting if the operator's blood alcohol concentration [(BAC)] exceeds a predetermined level when the operator blows into the device." Id. at -50.17(d).

9

The Legislature first enacted a DWI law concerning IIDs in 1999. L. 1999, c. 417 (the 1999 Act). The 1999 Act opens with a declaration that, despite strong existing efforts to keep drunk drivers off the roads, IIDs would "offer a technically feasible and effective means of further reducing the incidence of drunk driving." Id. § 1(b) (codified at N.J.S.A. 39:4-50.16(b)).

Under the original 1999 statutory scheme, sentencing judges had discretion to order the installation of an IID to first and subsequent DWI offenders for a designated range of time after the end of the mandatory license suspension period set forth in N.J.S.A. 39:4-50. Id. § 2 (providing that "the court may order" the device installed); id. § 7 (noting the mandatory license suspension periods in N.J.S.A. 39:4-50). The device was to be installed in "every motor vehicle owned, leased or regularly operated by the offender." Id. § 2. The 1999 Act required courts imposing the IID installation condition at sentencing to "notify the [Chief Administrator of the MVC]" and that the MVC then "require that the device be installed before reinstatement of the person's driver's license." Id. § 3. The statute further directed the MVC to imprint that information on the license with a notation of the IID requirement. Ibid.

The 1999 Act also authorized the MVC to regulate IID installation and use, and to certify an approved list of IIDs and licensed IID manufacturers. Id.

10

§ 5 (codified at N.J.S.A. 39:4-50.20); id. § 6 (codified at N.J.S.A. 39:4-50.21). The Act included a provision authorizing reduced costs of installation for indigent offenders. Id. § 6. During the legislative process for the 1999 Act, Senate amendments were made to the bill to clarify that the MVC "rather than the courts" would be "responsible for ensuring that an [IID] is installed prior to reinstating a person's driver's license previously suspended." S. Floor Statement, A. 157 (Dec. 6, 1999) (the Senate Floor Statement).

In 2009, the Legislature enacted what is known as Ricci's Law, which amended the DWI laws and the IID provisions. L. 2009, c. 201, § 1. Ricci's Law made installation of the device mandatory for an expanded group of defendants, including those who are second or subsequent offenders. Ricci's Law also modified the statutory language specifying the motor vehicle in which the IID needed to be installed, changing it from "every motor vehicle owned, leased or regularly operated by the offender" to "the motor vehicle principally operated by the offender." Compare 1999 Act §§ 2, 7, with Ricci's Law §§ 1, 2 (emphases added).

Under the DWI statutes in force at the time defendant was sentenced in 2014, repeat offenders such as her were subject to the following mandatory sentencing provisions set forth in N.J.S.A. 39:4-50(a)(2):

> For a second violation, a person shall be subject to a fine of not less than $500.00 nor more than $1,000.00,

11

and shall be ordered by the court to perform community service for a period of 30 days, which shall be of such form and on such terms as the court shall deem appropriate under the circumstances, and shall be sentenced to imprisonment[5] for a term of not less than 48 consecutive hours, which shall not be suspended or served on probation, nor more than 90 days, and shall forfeit his right to operate a motor vehicle over the highways of this State for a period of two years upon conviction, and, after the expiration of said period, he may make application to the Chief Administrator of the New Jersey [MVC] for a license to operate a motor vehicle, which application may be granted at the discretion of the chief [MVC] administrator, consistent with subsection (b) of this section. For a second violation, a person also shall be required to install an [IID] under the provisions of [N.J.S.A. 39:4-50.16 et seq.].

[N.J.S.A. 39:4-50(a)(2) (2009) (emphases added).][6]

N.J.S.A. 39:4-50.17(b) detailed the permissible terms of the required IID facet of a repeat offender's sentence:

In sentencing a second or subsequent offender . . . the court shall order, in addition to any other penalty imposed [by the relevant statute], the installation of an [IID] in the motor vehicle principally operated by the

---

[5] Another portion of N.J.S.A. 39:4-50(a) granted courts a degree of discretion over the imprisonment requirement, allowing judges "for a first or second offense . . . [to] sentence the person so convicted to the county jail, to the workhouse of the county wherein the offense was committed, to an inpatient rehabilitation program or to an [IDRC] or other facility."

[6] Unless we otherwise refer to an earlier provision of the statute, the quotations from and citations to the statutes are the ones currently in force.

12

offender during and following the expiration of the period of license suspension imposed under [N.J.S.A. 39:4-50 or -50.4a]. In addition to installation during the period of license suspension, the device shall remain installed for not less than one year or more than three years, commencing immediately upon the return of the offender's driver's license after the required period of suspension has been served.

[Id. at -50.17(b) (2009) (emphases added).]

The statute also directed the court to "require that, for the duration of its order, an offender shall drive no vehicle other than one in which an interlock device has been installed pursuant to the order." Id. at -50.17(c) (2009). Moreover, after ordering the IID installation, the court was tasked with notifying the MVC and, in turn, the MVC was tasked with requiring the device be installed before restoring the driver's license. Id. at -50.18 (2009).

The Legislature conferred upon judges a role in promoting IID installation, creating a separate offense for non-compliance with that requirement:

A person who fails to install an interlock device ordered by the court in a motor vehicle owned, leased or regularly operated by him shall have his driver's license suspended for one year, in addition to any other suspension or revocation imposed under [N.J.S.A.] 39:4-50, unless the court determines a valid reason exists for the failure to comply. A person in whose vehicle an interlock device is installed pursuant to a court order who drives that vehicle after it has been

13

started by any means other than his own blowing into the device or who drives a vehicle that is not equipped with such a device shall have his driver's license suspended for one year, in addition to any other penalty applicable by law.

[Id. at -50.19(a) (2009) (emphases added).]

In deciding whether to impose the additional one-year suspension, courts are called upon to determine whether a "valid reason" exists for a defendant's failure to comply with the IID requirement. Ibid.; accord State v. Denelsbeck, 225 N.J. 103, 123 (2016) (alluding to certain non-compliance situations in which the additional suspension period may be withheld).

B.

The DWI statutes were revised again in 2019, five years after defendant's 2014 sentencing. L. 2019, c. 248 (the 2019 Act). The revisions included changes to the IID provisions. Although defendant does not argue that the 2019 version of the law applies to her retroactively,[7] that revision provides fuller context to an understanding of the overall statutory scheme and the respective roles of the sentencing court and the MVC within it.

---

[7] The 2019 modifications to the IID statutory scheme cover only conduct occurring after their effective date of December 1, 2019. See 2019 Act § 7; State v. Scudieri, 469 N.J. Super. 507, 516-25 (App. Div. 2021) (analyzing the 2019 Act's text, the legislative intent, and inappropriateness of retroactive application of its amendment to the breathalyzer refusal provision in N.J.S.A. 39:4-50.4(a)).

14

The 2019 Act strengthened the IID requirement in several respects. It extended the IID mandate to first-time offenders. Id. § 1(g) (codified at N.J.S.A. 39:4-50.16a); id. § 2(a)(1) (codified at N.J.S.A. 39:4-50(a)(1)). The 2019 Act also lengthened the time frames that IIDs would need to be installed on offenders' vehicles. In particular, the IID term for second and subsequent offenders increased from a period of one to three years to two to four years. Compare 1999 Act § 2(b) and Ricci's Law § 2(b), with 2019 Act § 4(b) (codified at N.J.S.A. 39:4-50.17(b)).

As amended in 2019, section 50.17(c) instructs offenders initially to "provide to the court information identifying the vehicle on which the IID is to be installed." N.J.S.A. 39:4-50.17(c) (emphasis added). The offender must also furnish, under penalty of perjury, "any other information deemed relevant by the court." Ibid. (emphasis added). If an offender "attests [to the court] to not owning, leasing, or operating a motor vehicle," then the driver's license is forfeited for the same required IID time period. Ibid. "An offender immediately shall notify the court of the purchase, lease, or access to operation of a motor vehicle and install an [IID] in the vehicle." Ibid. (emphasis added).[8] Those sentencing and post-sentencing responsibilities imposed upon

---

[8] Additionally, the 2019 Act sets forth procedures governing the removal of the IID from the vehicle, which requires the MVC to receive notice from an IID vendor and provides a mechanism by which the sentencing court can

15

the court are consistent with the general allocation of responsibilities under the pre-2019 version of the statute.

## C.

As part of the 1999 Act, the MVC was directed to "promulgate rules and regulations for the installation and use of [IIDs]." 1999 Act § 6 (codified at N.J.S.A. 39:4-50.21). The Legislature instructed that the administrative rules should meet federal model specifications for IIDs and establish guidelines for how to use the devices, where they can be installed, and how indigent persons can acquire the devices at reduced rates. Ibid.

The MVC has promulgated such rules at N.J.A.C. 13:19-6.1 to -6.15. As explained in their stated purpose and scope, the rules "establish[] procedures and requirements for the certification of [IIDs] and for the designation of approved [IID] service centers by the Chief Administrator of the [MVC]," "govern[] manufacturers and service centers of [IIDs] certified by the Chief Administrator," and "establish[] procedures and requirements for the provision of certified [IIDs] at reduced rates to persons who qualify as indigent." N.J.A.C. 13:19-6.1(b) to (d).

---

intervene and lengthen the IID term. 2019 Act § 5 (codified at N.J.S.A. 39:4-50.18(c) to (d)).

16

Administrative hearings are available before the MVC for drivers "in cases involving denial, revocation, suspension, or refusal to renew licenses," among other subjects. Id. at -1.1. However, such hearings are not to be provided where the law mandates suspension or revocation and the MVC lacks discretion to alter it, or where a court order requires such suspension or revocation:

> No hearing shall be provided when the action taken by the Commission is required by any law which prescribes a suspension or revocation of a license or a privilege and which requires no exercise of discretion on the part of the [MVC]. No hearing shall be provided when a license or privilege is suspended or revoked by order of a court of competent jurisdiction.
>
> [Id. at -1.13(c) (emphases added).]

### III.

Subject matter jurisdiction is a question of law. See Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 66 (1978) (evaluating jurisdiction as a predicate derived from legal sources). On appeal, courts review such jurisdictional rulings de novo, as we do here. Bandler v. Landry's Inc., 464 N.J. Super. 311, 318 (App. Div. 2020), certif. denied, 245 N.J. 55 (2021).

We begin our jurisdictional discussion by recognizing several fundamental principles about the sentencing process. Sentencing is a core function of the Judiciary. "Although sentencing discretion is shared to some

17

extent among the three branches of government, the determination of the sentence is committed to the discretion of the judiciary." State v. Lagares, 127 N.J. 20, 27-28 (1992).

A judge's sentencing decision is guided by criteria established by the Legislature and also must be faithful to constitutional principles. As this Court has noted, "we cannot overstress the significance of the judicial responsibility in imposing sentence." State v. Warren, 115 N.J. 433, 449 (1989). The "[p]ronouncement of judgment of sentence is among the most solemn and serious responsibilities of a trial court." Ibid. (quoting State v. Roth, 95 N.J. 334, 365 (1979)). In carrying out those responsibilities, sentencing judges must carefully consider both the nature of the proven offenses and the individual characteristics of each offender. They commonly exercise discretion by balancing pertinent aggravating factors against any mitigating factors that may weigh in the offender's favor. See N.J.S.A. 2C:44-1(a) to (b). Judges also must assure the sentence comports with any mandatory terms required by the applicable codes, such as the installation of an IID that is the subject of this case. See State v. Vasquez, 129 N.J. 189, 199 (1992).

By contrast, administrative agencies in the Executive Branch are tasked with implementing the terms of sentences imposed by the courts. For example, the Department of Corrections confines and oversees defendants whom judges

18

have sentenced to prison, see N.J.S.A. 30:1B-3, -6, and the Parole Board administers parole and parole supervision, see N.J.S.A. 2C:47-5, 30:4-123.55. Guided by statutory provisions, such agencies ensure that the terms of sentence imposed by the courts are carried out.

That said, the courts sometimes are called upon to resume involvement in a criminal matter after sentencing. For instance, courts may need to decide whether a defendant has violated the terms of the sentence and whether any probation should be revoked, or whether the defendant has acted in contempt of court orders. At times, a defendant may move before the court to rectify an aspect of a sentence that is illegal, or to modify a sentence in limited situations where the law allows such modification. The power to change a sentence, if justified, rests with the court.

The structure of the DWI laws is consistent with that general framework. Depending on the severity of the charges, the defendant's guilt of the DWI charge is adjudicated in either the municipal court or, if indictable offenses are charged, the Criminal Part. R. 3:1-5 (indictable charges); R. 7:1 (non-indictable charges). If the defendant is convicted of a DWI offense, the judge then imposes sentence as prescribed by the DWI statutes. Once that sentence is imposed, the Executive Branch thereafter generally administers the terms of the sentence, including but not limited to the revocation or suspension of the

19

defendant's driver's license, defendant's completion of any jail or IDRC time, the payment of any fines, and IID installation.

As our foregoing discussion of the DWI statutory scheme reveals, many of these implementation tasks are performed by the MVC. The MVC does not, however, function as a sentencing court. Instead, the agency enforces the sentence a judge has prescribed in the judgment of conviction.

The plain text and structure of the DWI statutes make it clear that the court has overarching jurisdiction over DWI sentences. The 1999, 2009, and present 2019 versions of the statute have maintained that judicial sentencing role. Most pertinent here, the provision detailing the IID sentencing component refers to "the court . . . order[ing]" the IID as an additional "penalty." N.J.S.A. 39:4-50.17(b) (2009) (emphasis added). The court's role in imposing that penalty is repeated throughout the IID provision. See id. at -50.17(a) to (c) (2009).

The court's zone of discretion concerning the IID installation period is illustrated by this case. Under the statutes that existed when defendant was sentenced in 2014, the court had the discretion to choose an IID installation period from one to three years. After weighing the pertinent aggravating factors and the one relevant mitigating factor, the court decided that a two-year period of mandatory installation, rather than the one-year minimum or the

20

three-year maximum period, was appropriate for this defendant. The statutes do not empower the MVC to prescribe the period or to override the court's determination.

The statute instructs that the sentencing court "notify" the MVC of the order for a defendant to install an IID before license restoration, so that the MVC can comply with the court's sentencing order if it decides to restore driving privileges for the DWI offender. Id. at -50.18 (2009). The MVC cannot rescind the court's order that it has received.

The legislative direction to the MVC to regulate the manner of IID installation and use does not grant authority to modify an IID sentence. Instead, the statute permits the MVC to establish technical rules and requirements to implement the IID sentencing requirement. Id. at -50.21.[9] The statute's delegation of discretion to the MVC in administering the license restoration phase under N.J.S.A. 39:4-50(a)(2) and (b) does not divest the court of its sentencing powers.

As the Attorney General's brief explains, the MVC's function is "ministerial in nature," when determining whether defendants have completed

---

[9] The 1999 Senate Floor Statement quoted above does not alter our jurisdictional analysis, as the Senate Floor Statement merely highlights the MVC's specified role in license reinstatement. The Senate Floor Statement does not address the court's sentencing role.

21

all of the steps necessary to have their licenses restored in compliance with the court's sentence. According to the Attorney General, the MVC's described role is to review a "checklist" before restoring driving privileges and "regulate the minutiae surrounding the installation and use of an IID that was mandated by a court."

The Appellate Division's opinion in this case noted that in State v. Revie, 220 N.J. 126, 128, 138-40 (2014), we referred to the IID requirement, along with license suspension and fines mandated by the DWI laws, as "administrative penalties." However, we used that term in Revie for the discrete purpose of distinguishing punishment that has constitutional implications, such as incarceration, from those sanctions that do not. See ibid. The "administrative" label we used in Revie to refer to the IID and other non-custodial penalties does not alter the court's sentencing jurisdiction to impose those sanctions. Indeed, the MVC is not even mentioned in Revie.

Likewise, State v. Beauchamp, 262 N.J. Super. 532 (App. Div. 1993), which was cited by the Prosecutor and relied upon by the Appellate Division, does not compel a different conclusion. Beauchamp involved a situation in which a criminal judge at sentencing attempted to impose multiple conditions on the defendant's future parole, thereby constricting the Parole Board's functions in assessing all pertinent factors at the time of the defendant's

22

eventual parole eligibility.  See id. at 536-37.  In ruling that the judge overstepped his sentencing authority, the Appellate Division in Beauchamp stated:

> Under our constitutional and statutory scheme, once a trial court has pronounced sentence and entered a judgment of conviction, it relinquishes jurisdiction over the matter to the executive branch, except for the appellate process and to the extent that regular procedures permit the matter to be reopened in a judicial forum for limited purposes which can be achieved only in a court.  See, e.g., R. 3:21-10; 3:22.
>
> [Id. at 537.]

We do not construe that passage in Beauchamp to preclude the Criminal Part from entertaining defendant's motion for post-sentencing relief under Rule 7:9-4.  We regard her motion as an example of the "regular procedures" available within the court rules that permit trial courts to reopen sentencing matters in certain instances.  Any adjustment or credit to defendant's IID sentence -- assuming for sake of discussion that one is obtainable on statutory or constitutional grounds -- "can be achieved only in a court."  Ibid.  To the extent that the Appellate Division's passage in Beauchamp might be read to strip the sentencing court of jurisdiction in this IID matter, we do not endorse such a reading.  In essence, Beauchamp illustrates when a trial court has construed its jurisdiction too expansively, and the present case is one where jurisdiction was construed too narrowly.

23

The nature of this defendant's request concerning her sentence inherently calls for a judicial determination. Fundamentally, defendant is seeking a declaratory ruling that the years she lacked access to a vehicle, and was thus unable to install an IID, justify up to an equivalent period of relief from her sentence. Courts are well equipped to render declaratory rulings that involve such matters of status under the law. See N.J.S.A. 2A:16-50 to -62 (the Declaratory Judgment Act (DJA)); In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 275 (2017) (noting that the DJA "vest[ed] New Jersey courts with the 'power to declare rights, status and other legal relations'" (quoting N.J.S.A. 2A:16-52)).

Our analysis is buttressed by the MVC's legal position, as articulated by the Attorney General, that it lacks jurisdiction to hear defendant's motion. Although we are not bound by it, we generally do afford substantial weight to an administrative agency's own interpretation of its delegated functions. See Patel v. MVC, 200 N.J. 413, 420 (2009); Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 196 (2007). Likewise, although we are not bound by it, we commonly pay significant attention to the legal position of the Attorney General, the "sole legal adviser" to state government concerning the interpretation of "all statutes" that affect state agencies. See N.J.S.A. 52:17A-4(e); see also Peper, 77 N.J. at 70 (reaffirming that courts "should attach

24

weight to the Attorney General's [legal] opinion"). We reject the Prosecutor's contention that the head of the MVC and the Attorney General, as officers within the Executive Branch, have improperly ceded authority to the Judiciary to hear defendant's motion.

We recognize that neither the trial court nor the Appellate Division had the benefit of the input of the MVC and the Attorney General on the jurisdictional issue. Now that we have the benefit of that expertise and advocacy, we are persuaded that we should not foist upon the MVC a sentencing motion that it has no jurisdiction to address. No hearing before the MVC under N.J.A.C. 13:19-1.13(c) was appropriate for modifying or reconsidering the court's judgment of conviction.

For those reasons, we reverse the judgment of the Appellate Division and remand for further proceedings before the sentencing court. The remand is without prejudice to defendant, who may develop the record and present her arguments more fully in that forum. The Prosecutor can, of course, participate in those Criminal Part proceedings, whereas the Prosecutor would not have been a party if jurisdiction had been transferred to the MVC. The remand shall be completed expeditiously, given that defendant filed her motion in the proper forum four years ago.

25

Although we are mindful the motion judge did comment about the merits of defendant's claims after finding the sentencing court lacked jurisdiction, as did the Appellate Division, those superfluous observations are dicta. Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 332 (1949) (defining dicta as a statement in a judicial opinion that "was not necessary to the decision then being made"). They should not foreclose the trial court's further consideration of the merits of defendant's arguments. We intimate no views about the merits here, restricting our focus to the sole issue of jurisdiction before us.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the sentencing court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUDGE SABATINO's opinion.

26